# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 18-70177 |
| JAMES WILLIAM HORTON, III & | ) | |
| JESSIKA LYNN-ELISE A. HORTON | ) | |
| | ) | Chapter 7 |
| Debtors. | ) | |
| AMY MARIE HINTY & | ) | |
| JOHN C.T. HINTY | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary Proc. No. 18-07013 |
| | ) | |
| JAMES WILLIAM HORTON, III & | ) | |
| JESSIKA LYNN-ELISE A. HORTON | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the Court on the Complaint filed by Plaintiffs, Amy Marie Hinty and John C.T. Hinty, *pro se*, (the "Plaintiffs"), former landlords of the Debtors, against James William Horton, III and Jessika Lynn-Elise Allagas Horton, also *pro se* (the "Debtors"). The Complaint seeks a determination that the costs of repair of certain property damages are nondischargeable under 11 U.S.C. § 523(a)(6), as debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." The trial of this adversary proceeding was held on August 7, 2018. At its conclusion the Court took the matter under advisement. For the reasons set forth below, the Court will grant the relief requested in part. The rest will be denied.

## FINDINGS OF FACT

In August 2013, the Debtors signed a one-year lease agreement with the Plaintiffs for property located at 4921 Fralin Road, NW, Roanoke, Virginia (the "Property"). The terms of the lease provided that the Debtors would pay to the Plaintiffs $750.00 per month for rent, plus a $100.00 non-refundable pet deposit for each of their two dogs, and a $750.00 security deposit. Additionally, the contract included a provision that in the event the Plaintiffs decided to sell the Property, they could terminate the contract upon forty-five (45) days' notice.

In the spring of 2014, the Plaintiffs listed the Property for sale. In response, on April 10, 2014, the Debtors notified the Plaintiffs that they would vacate the Property by the end of the month, before the expiration of their lease term because of the stress associated with moving upon a 45-days' notice that would be forthcoming. In an email to the Plaintiffs, the Debtors reasoned that due to their special needs son, they needed to find a more stable residence. Debtors' Exhibit C.

After notifying the landlord of their intent to vacate, the Debtors began moving out of the Property.[1] At the time the Plaintiffs conducted an inspection of the Property, there was an extensive amount of garbage on the ground outside of garbage cans and in the yard, as well as unsanitary living conditions inside the Property that can only be described as deplorable. There was also a hole in the shower wall in addition to scratches on the hardwood floors. Additionally, the Debtors removed four large boxwood bushes located by the entrance of the Property and replaced them with small rose bushes.

To recover damages, including the unpaid rent for the months of May through August, and an unpaid water bill, the Plaintiffs brought an action in the Roanoke City General District

---

[1] There is conflicting evidence regarding the exact date the Debtors left the Property. The Debtors contend they moved out a week after the Plaintiffs inspected the property, but they could not present any proof.

Court against the Debtors seeking $3,819.96, plus interest and court costs. The Plaintiffs calculated this amount as follows: $3,000.00 for unpaid rent; $63.50 for an unpaid water bill; and itemized damages of $1,706.46 consisting of $7.97 for a dryer vent cap, $54.98 for a handheld showerhead, $426.51 for sliding shower doors, $275.00 for a shower wall side and back panels, $550.00 for refinishing the hardwood floors, and $392.00 for four English boxwoods. The total of $4,769.96 was then reduced by the $750.00 security deposit and the $200.00 pet deposit withheld by the Plaintiffs. Plaintiffs' Exhibit 4. The Roanoke City General District Court awarded the Plaintiffs $3,019.96 in damages, plus interest, and $70.00 in court costs on July 11, 2014.

The Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court on February 14, 2018. The Debtors listed the Plaintiffs as an unsecured creditor on Schedule E/F with a claim in the amount of $3,019.96 based on this judgment. On April 19, 2018, the Debtors' former landlord initiated this adversary proceeding seeking to except $1,706.46 in repair costs, plus interest, and court costs from discharge pursuant to 11 U.S.C. § 523(a)(6).

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

**I.    The Applicable Legal Standard**

Section 523(a)(6) excepts from a debtor's discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The primary issue for the Court is to determine which, if any, of the damages alleged by the Plaintiffs resulted from the Debtors' willful and malicious actions and must therefore be excepted from discharge under § 523(a)(6). As this Court has previously stated, "there are three elements that must be proven [under § 523(a)(6)]: (1) that the debtor's actions caused an injury to the creditor's person or property; (2) that the debtor's actions were willful; and (3) that the debtor's actions were malicious." *Pence v. Carr (In re Carr)*, No. 16-71500, A.P. No. 17-07006, 2017 WL 4685034, at *2 (Bankr. W.D. Va. Oct. 17, 2017). The burden of persuasion rests with the Plaintiffs to establish each of these elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 659-60, 112 L.Ed.2d 755 (1991).

**II.    Collateral Estoppel**

The Plaintiffs raised the issue of collateral estoppel in support of their claim under Section 523(a)(6). "State court judgments can collaterally estop the litigation of issues in adversary proceedings in federal bankruptcy court." *In re Duncan*, 448 F.3d 725, 728 (4th Cir. 2006). "In order to determine whether a state court judgment should be given collateral estoppel effect, courts must apply the relevant state law of collateral estoppel." *Fox v. Crowgey (In re Crowgey)*, 517 B.R. 639, 646 (Bankr. W.D. Va. 2014); *see also Duncan*, 448 F.3d at 728.

> Under Virginia law, a party invoking collateral estoppel must prove the following five elements: (1) the parties to the two proceedings must be the same or in privity; (2) the prior proceeding must have resulted in a valid and final judgment against the party against whom preclusion is sought or his privy; (3) the factual issue to be precluded must have been actually litigated in the prior proceeding; (4) the factual issue to be precluded must have been essential to the judgment in the prior proceeding; and (5) there must be mutuality, "that is, a party is generally prevented from invoking the preclusive force of a judgment unless that

> party would have been bound had the prior litigation of the issue reached the opposite result." *TransDulles Center, Inc. v. Sharma*, 252 Va. 20, 22-23, 472 S.E.2d 274, 275 (1996). An issue is subject to collateral estoppel only if it is *identical* to an issue decided in a prior proceeding.

*Duncan*, 448 F.3d at 728.

The controlling issue in the adversary proceeding is whether the Debtors intended to injure the Plaintiffs or their property. Under § 523(a)(6), a debt is not dischargeable in a Chapter 7 bankruptcy if it arises from a "willful and malicious injury by the debtor to another." 11 U.S.C. § 523(a)(6). As the Supreme Court instructs in *Geiger*, Section 523(a)(6) applies only to "acts done with *the actual intent to cause injury*." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974 (1998) (emphasis added). Section 523(a)(6) is not satisfied by negligent, grossly negligent or reckless conduct. *Id.* at 62-64; *Zygulski v. Daugherty*, 236 B.R. 646, 653 (1999); *In re Scarlata*, 127 B.R. 1004, 1013 (1991). Moreover, the mere fact that a debtor engaged in an intentional act does not necessarily mean that he acted willfully and maliciously for purposes of § 523(a)(6). *In re Moore*, 357 F.3d 1125, 1128 (10th Cir. 2004); *In re Williams*, 337 F.3d 504, 509 (5th Cir. 2003); *In re Miller*, 156 F.3d 598, 604 (5th Cir. 1998). "[N]ondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Geiger*, 523 U.S. at 61, 118 S.Ct. at 977.

The Plaintiffs allege that, after hearing testimony from them and reviewing documentary evidence, the Roanoke City General District Court "entered a default judgment . . . against Mr. and Mrs. Horton for vandalism, unpaid rent and a water bill" and directed this Court to the judgment entered by the state court filed as an exhibit. Complaint, ¶ 13. However, nothing in the state court judgment even mentions vandalism, much less a finding that the Debtors intended an intentional injury to the Plaintiffs or their property that would fall within the scope of Section 523(a)(6). In fact, the Warrant in Debt filed by the Plaintiffs in state court reflects the only basis

5

for the Plaintiffs' claim in that court was one in contract, apparently for breach of the lease. "A simple breach of contract . . . , even if intentional, would not give rise to a § 523(a)(6) violation." *Ocean Equity Group, Inc. v. Wooten (In re Wooten)*, 423 B.R. 108, 130 (Bankr. E.D. Va. 2010) (quoting *Hasalia v. Walker (In re Walker)*, 416 B.R. 449, 468 (Bankr. W.D. N.C. 2009)). There is no indication in the state court judgment that findings were made in that court that would form the basis of a collateral estoppel claim in this Court, and the Court finds that collateral estoppel does not apply here.

### III. Willful and Malicious Injury

"To establish the element of injury is a fairly straightforward inquiry, but determining the elements of willfulness and malice is less so." *Moreno v. Basl (In re Basl)*, No. 17-32341-KLP, A.P. No. 17-04495, 2018 WL 1886571, at *3 (Bankr. E.D. Va. Apr. 18, 2018). In the bankruptcy context, the term "malice" has been defined as "an act causing injury without just cause or excuse." *In re Wooten*, 423 B.R. at 130 (quoting *Johnson v. Davis (In re Davis)*, 262 B.R. 663, 670-71 (Bankr. E.D. Va. 2001) (citing *Branch Banking & Trust Co. of Va., Inc. v. Powers (In re Powers)*, 227 B.R. 73 (Bankr. E.D. Va. 1998))). The plaintiff is required to prove that the "injurious act was done deliberately, intentionally and with knowing disregard for plaintiff's rights." *In re Davis*, 262 B.R. at 671. The Court may infer malice by the evidence submitted representing the acts and conduct exhibited by the debtor and the circumstance of the injury. *Id.* at 670. Nonetheless, such inferences must be balanced against the backdrop of the Bankruptcy Code's primary purpose to give honest debtors a fresh financial start. *In re Basl*, 2018 WL 1886571, at *2.

Here, the Plaintiffs do not seek exception to discharge for the Debtors' unpaid rent and water utility bill and effectively concede that failure to pay does not give rise to a

6

nondischargeable debt.  Complaint, ¶ 20.  Thus, the Plaintiffs arrive at the sum of $1,706.46 in costs of repairs without accounting for the security deposit or pet deposit retained by them after the Debtors vacated the Property.  The Debtors assert that the hole in the shower wall surrounding the side and back panels was caused by the Debtors' special needs son.  The Debtors further assert that the remaining damages were the result of ordinary wear and tear and not caused with any malicious intent.  In addition, the female Debtor testified that she replaced the four boxwood bushes with rose bushes with the verbal permission of the Plaintiffs.

The Plaintiffs dispute giving the female Debtor permission to replace the boxwood bushes in the front yard and point to the lease agreement, which states that the tenant must receive specific written consent of the landlord before making any changes.  Plaintiffs' Exhibit A attached to Complaint, ¶11.  Further, the Plaintiffs contend that the inordinate amount of garbage on the Property, including several revolting items found among items left in the house, are sufficient for the Court to infer willful and malicious conduct as to all damages giving rise to the state court judgment, other than the rent and water bill.

In consideration of all the evidence presented by the parties and their oral testimony, the Court finds that only the amount of damage sustained with regard to the sliding shower doors was willful and malicious. The male Debtor knew he ran his lawnmower into paint cans in the storage shed and covered the shower doors with paint.  He simply left them there, with no effort to clean or reinstall them.  The Court finds the male Debtor knew with objective certainty this action, and his subsequent inaction to remedy the damage he caused, would injure the Plaintiffs and their property, and he did so knowingly, deliberately, and intentionally without just cause or excuse.  Plaintiffs' Itemized List of Damages reflects these damages amount to $426.51.  Plaintiffs' Exhibit 4.  The Court finds that $426.51 as costs to install new sliding shower doors

falls into the category of non-dischargeable debt under Section 523(a)(6).[2]  This finding is against James William Horton, III.  There is no evidence the female Debtor had any involvement in causing the damage to the shower doors.

The Court finds the majority of the other damages to the Property are a consequence of "slovenly living habits, negligence, and deplorable housekeeping," which the Court has previously held, absent the requisite intent to injure, do not give rise to a claim of non-dischargeability under Section 523(a)(6).  *In re Carr*, 2017 WL 4685034.  Moreover, the Court finds that the Plaintiffs did not meet their burden of proof to show by a preponderance of the evidence that removing the boxwood bushes and planting rose bushes is anything more than a contract breach, one which does not rise to the level of non-dischargeable conduct under Section 523(a)(6).[3]

## **CONCLUSION**

For the foregoing reasons, this Court finds that the debt owed by the male Debtor, James William Horton, III, to the Plaintiffs, Amy Marie Hinty and John C.T. Hinty, is non-dischargeable in the amount of $426.51 pursuant to 11 U.S.C. § 523(a)(6).  The balance of the debt at issue in this case shall be discharged.  A separate Order shall be entered.

Decided this 21st day of August, 2018.

_____
UNITED STATES BANKRUPTCY JUDGE

---

[2] Based upon the evidence presented, the Plaintiffs withheld the security deposit pursuant to paragraph 9 of the lease, which provides that "[t]enant shall pay landlord, upon execution of this Agreement a security deposit in the amount of $750.00 to be held by landlord. The reasonable cost of repairing any damages caused by Tenant and/or cleaning the house, beyond reasonable wear and tear, will be deducted from the security deposit." Exhibit A attached to Plaintiffs' Complaint. The Plaintiffs took that money as an offset.  Much of the remaining damages were already covered by the security deposit.

[3] Likewise, the Court finds that the damage to the shower wall caused by the Debtors' special needs child also does not rise to the level of non-dischargeability under Section 523(a)(6).